UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. MITCHELL,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>R. DIAZ, et al.,<br><br>　　　　Defendants. | Case No. 1:22-cv-00006-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S FIRST AMENDMENT FREE EXERCISE CLAIM AGAINST DEFENDANT RODRIGUEZ, AND THAT ALL OTHER CLAIMS BE DISMISSED<br><br>(ECF No. 24)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

　　　John Mitchell ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action. Plaintiff filed the complaint commencing this action on December 27, 2021. (ECF No. 1). On March 16, 2022, Plaintiff indicated that he wanted to file an amended complaint (ECF No. 15), and on March 18, 2022, the Court gave Plaintiff sixty days to do so (ECF No. 17). On May 16, 2022, Plaintiff filed his First Amended Complaint. (ECF No. 24).

　　　On July 28, 2022, the Court screened Plaintiff's First Amended Complaint. (ECF No. 25). The Court found that Plaintiff's First Amended Complaint fails to comply with Federal Rules of Civil Procedure 18 and 20. (Id.). The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint that is **no longer than fifteen pages (including exhibits)**….; or b. Notify the Court in writing that he wants to stand on his complaint." (Id. at 14). Plaintiff

1

was informed that if he chose to stand on his First Amended Complaint, the Court "will screen Plaintiff's first claim (and related claims) and recommend that the rest of Plaintiff's claims be dismissed as unrelated." (Id.). On August 12, 2022, Plaintiff filed a notice indicating that he wants to stand on his complaint. (ECF No. 26).

Accordingly, the Court has screened the first claim in Plaintiff's First Amended Complaint, as well as the related claims. For the reasons described below, the Court will recommend that this action proceed on Plaintiff's First Amendment free exercise claim against defendant Rodriguez. The Court will also recommend that Plaintiff's claim against defendant Rodriguez for retaliation in violation of the First Amendment and Plaintiff's claim against defendants Stanley and Rodriguez for depriving him of his religious property in violation of his Fourteenth Amendment due process rights be dismissed for failure to state a claim. Finally, the Court will recommend that all other claims be dismissed, without prejudice, as unrelated.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

I.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting

this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

**II.    SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff's complaint is twenty-five pages. Plaintiff sues sixteen defendants and brings numerous claims.

Plaintiff brings his first claim against defendant Rodriguez for retaliation in violation of Plaintiff's First Amendment right to exercise his religion.[1] Plaintiff brings his second claim against defendants Stanley and Rodriguez for depriving him of his religious property in violation of his Fourteenth Amendment due process rights.

Plaintiff alleges that he is a sincere Muslim who follows the religious tenants of Islam and adheres to its articles of faith. Plaintiff believes that wearing the silver chain and ANKH medallion elevates GOD consciousness and expresses his belief that GOD created men and women to submit to the worship of him alone. It is Plaintiff's practice to wear his ANKH at all times.

Plaintiff is a qualified inmate with a disability. He is prescribed ankle/foot orthosis and eyeglasses. He has a significant deformity in his right hand, and spinal stenosis. He also has depression, anxiety attacks, adjustment disorder, bi-polar disorder, and post-traumatic stress disorder.

On September 29, 2019, Plaintiff transferred from R.J. Donovan Prison to Kern Valley State Prison ("KVSP"), Administrative Segregation #1. Plaintiff asked defendant Rodriguez, the property officer, to provide Plaintiff with his legal papers pertaining to his pending case,

---

[1] While listed as one claim, this appears to be two separate claims (one claim for violation of Plaintiff's free exercise rights and one for retaliation in violation of the First Amendment).

Mitchell v. Robicheaux. Defendant Rodriguez ignored the request.

On or about October 10, 2019, Plaintiff submitted a staff complaint against defendant Rodriguez. On this same day Warden Stewart at R.J. Donovan Prison granted appeal #RJD-B-19-5703, which resulted in the Warden sending Plaintiff's silver chain/ANKH medallion to Plaintiff at KVSP. The medallion arrived on October 15, 2019.

On or about October 10, 2019, Plaintiff also sent a motion for court ordered intervention in Mitchell v. Davey.

On November 1, 2019, defendant Rodriguez brought Plaintiff's silver chain and medallion to his cell door and showed it to Plaintiff. He said, "[t]his came from Donovan, your [sic] not getting this back here!" Plaintiff asked why, and he responded, "I'm not giving it to you." Plaintiff told him it was religious and that Plaintiff had a right to wear it, then asked for a receipt. Plaintiff was told, "I'm putting it in your property." Defendant Rodriguez added, "602 it" and laughed as he walked away. Defendant Rodriguez did not provide a legitimate penological purpose for depriving Plaintiff of his silver chain and medallion. Plaintiff's silver chain and medallion were not biohazardous.

On November 3, 2019, Plaintiff sent a staff complaint to the KVSP Appeals Office.

On November 14, 2019, Plaintiff informed the United States District Court in Mitchell v. Robicheaux that defendant Rodriguez was withholding his religious property.

On November 5, 2019, defendant Gonzales returned an appeal to Plaintiff, instructing Plaintiff to remove the allegation of retaliation before the appeal would be processed.

On November 7, 2019, Plaintiff returned the appeal without the word retaliation.

On November 9, 2019, defendant Stanley gave Plaintiff a "cell search receipt" for his jewelry.

On November 14, 2019, Plaintiff sent a complaint against defendant Rodriguez for retaliation, and on November 18, 2019, defendant Gonzales cancelled it. On November 27, 2019, Plaintiff resubmitted the appeal that was again cancelled as duplicative of the appeal filed on November 14, 2019.

On December 17, 2019, after Plaintiff filed an appeal, defendant Stanley offered

Plaintiff a steel chain and crucifix as compensation. Plaintiff declined, informing defendant Stanley that he did not wear crosses because they symbolized a belief contrary to his religious beliefs.

Defendant Rodriguez kept or disposed of Plaintiff's silver chain and medallion. This burdened Plaintiff's practice of religion because it deprived Plaintiff of the ability to wear it during prayer. Plaintiff believes that the religious artifact brings him closer to GOD and that wearing it at all times expresses to GOD and others his devotion and sincerity to worshiping the creator of men and women.

Plaintiff also believes that defendant Rodriguez deprived Plaintiff of his silver chain and medallion because Plaintiff submitted a 602/complaint against defendant Rodriguez when he first arrived. In addition, defendant Rodriguez was allowed to read the motion Plaintiff submitted in Mitchell v. Robicheaux, in which Plaintiff informed the United States District Court that defendant Rodriguez was actively violating Plaintiff's religious rights and would not give Plaintiff his religious jewelry.

The remainder of Plaintiff's claims are unrelated to his first two claims. In another claim brought by Plaintiff, Plaintiff alleges that defendants Levya and Gonzales, who were responsible for processing his grievances, improperly processed his grievances in violation of the First Amendment. Plaintiff also alleges that they improperly processed his grievances in retaliation.

In another group of claims, Plaintiff alleges that on February 27, 2020, as Plaintiff went to the medication dispensary window, he got into a verbal altercation with defendant Furlong. Before Plaintiff could get his medication from defendant Vitto, defendants Pompa and Furlong put Plaintiff in restraints and pressed him up against a window, which busted his lip. Plaintiff was then taken to the program office, where defendants True and Espinoza sat talking. Defendant Pompa then punched and kicked Plaintiff. Defendant Mendoza was present for at least some of what occurred. Plaintiff later received a false Rules Violation Report. Plaintiff brings a claim for excessive force against defendants Furlong and Pompa and a retaliation claim against defendant Pompa. Plaintiff also brings an Americans with Disabilities Act claim

against defendants Pompa, Furlong, and Vitto.  Plaintiff alleges that defendant Pompa violated the Americans with Disabilities Act by using excessive force against him, and that defendant Vitto violated the Americans with Disabilities Act because she had a duty to administer medication, but she did not stop the officers before they took Plaintiff away from the window.

In another claim, Plaintiff alleges that defendant Pompa threatened him on November 14, 2021.  Plaintiff alleges that this threat violated the ADA.

In another claim, Plaintiff alleges that on January 30, 2020, he was taken to a classification committee after serving a SHU term.  Plaintiff expressed to defendant Godwin and Thompson that he wanted to remain in Administrative Segregation for his protection.  However, defendant Thompson told defendant Rodriguez to "bag and drag" Plaintiff if he does not want to come out of his cell.  Later that day Plaintiff was taken without incident to C-Upper Building 7 by defendants John Doe #1 and Jane Doe #1.  Plaintiff was put into a cell with inmate Razaq who was recently attacked.  Inmate Razaq told Plaintiff that John Doe #1 and Jane Doe #1 told inmate Razaq to fight Plaintiff if he wanted to go back to Administrative Segregation.  Plaintiff alleges that defendants Thompson, Loza, True, Espinoza, Pompa, John Doe #1, and Jane Doe #1 conspired together to violate Plaintiff's civil rights, both by attempting to have another inmate fight Plaintiff and by covering up February 27, 2020 excessive force incident.  The reason they conspired together was to retaliate against Plaintiff for exercising his First Amendment rights.

In another group of claims, Plaintiff sues supervisory defendants for certain actions of their subordinates.

**III.     ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant

holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B. Federal Rules of Civil Procedure 18 & 20

A complaint must comply with the requirements of Federal Rules of Civil Procedure 18 and 20. Under these rules, a plaintiff may not proceed on a myriad of unrelated claims against different defendants in a single action. Fed. R. Civ. P. 18(a), 20(a)(2). "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of

frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." K'napp v. California Dept. of Corrections, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013) (alterations in original) (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007), aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation, 599 Fed. App'x. 791 (9th Cir. 2015); see also Fed. R. Civ. P. 20(a)(2) ("Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."); Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997) ("[T]he 'same transaction' requirement[] refers to similarity in the factual background of a claim."). "Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party." Washington v. Fresno County Sheriff, 2014 WL 641137, at *2 (E.D. Cal., Feb. 18, 2014); Williams v. Madera Police Dep't, 2012 WL 3068944, at *3 (E.D. Cal., July 26, 2012) (same); Miller v. Kernan, 2017 WL 590259, at *3 (E.D. Cal., Feb. 14, 2017) (same); Solomon v. Carrasco, 2012 WL 3744666, at *3 (E.D. Cal., Aug. 28, 2012) (same).

Here, Plaintiff brings numerous claims, some of which are against different defendants based on different incidents. For example, Plaintiff brings claims against defendant Rodriguez and defendant Stanley based on the deprivation of religious property. Plaintiff brings claims against defendants Levya and Gonzales for improperly processing his grievances. Plaintiff also brings excessive force and other claims against defendants Pompa and Furlong based on an excessive force incident that occurred on February 27, 2020. There appears to be little to no factual overlap between these claims, and Plaintiff is bringing these claims against different defendants. Thus, these claims are unrelated and cannot all be brought in this suit.[2]

---

[2] The Court notes that Plaintiff brings claims based on supervisory liability and that he alleges a conspiracy. However, Plaintiff's allegations regarding supervisory liability are largely conclusory, as are his allegations regarding an alleged conspiracy between Thompson, John Doe #1 and John Doe #2. Moreover, even if

9

The Court previously allowed Plaintiff to either file an amended complaint to cure these deficiencies or to notify the Court that he wants to stand on his First Amended Complaint. (ECF No. 25). Plaintiff was informed that if he chose to stand on his complaint, the Court "will screen Plaintiff's first claim (and related claims) and recommend that the rest of Plaintiff's claims be dismissed as unrelated." (Id. at 14). As Plaintiff chose to stand on his complaint, the Court will screen Plaintiff's first claim and the related claims, which are Plaintiff's claims against defendant Rodriguez and defendant Stanley based on the deprivation of religious property. The Court will also recommend that all other claims be dismissed, without prejudice, as unrelated.[3]

### C. First Amendment Right to Free Exercise of Religion

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, prohibits government from making a law prohibiting the free exercise [of religion]. The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (alteration in original) (citations and internal quotation marks omitted). "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" Jones v. Williams, 791 F.3d 1023, 1032 (9th Cir. 2015) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987)). "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.'" Id. (quoting O'Lone, 482 U.S. at 349).

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria. First, the claimant's proffered belief must be sincerely held; the

---

sufficiently pled, neither the supervisory liability claims nor the conspiracy claims connect all of the claims Plaintiff is attempting to bring.

[3] The Court has reviewed the record, and there appears to be no prejudice in dismissing the unrelated claims.

First Amendment does not extend to so-called religions which ... are obviously shams and absurdities and whose members are patently devoid of religious sincerity.  Second, the claim must be rooted in religious belief, not in purely secular philosophical concerns." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (alteration in original) (citations and internal quotation marks omitted), supplemented, 65 F.3d 148 (9th Cir. 1995); see also Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in Malik determines whether the Free Exercise Clause applies).

Additionally, "[a] person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." Jones, 791 F.3d at 1031.  "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 1031-32 (alterations in original) (citation and internal quotation marks omitted).

Plaintiff brings a claim against defendant Rodriguez for violating his free exercise rights.  Plaintiff alleges that he is a sincere Muslim who follows the religious tenants of Islam and adheres to its articles of faith.  Plaintiff believes that wearing the silver chain and ANKH medallion elevates GOD consciousness and expresses his belief that GOD created men and women to submit to the worship of him alone.  It is Plaintiff's practice to wear his silver chain and medallion at all times.  However, defendant Rodriguez refused to give Plaintiff his silver chain and medallion, even though the Warden at R.J. Donovan Prison granted Plaintiff's appeal and directed that it be sent to Plaintiff.  Defendant Rodriguez did not provide a legitimate penological purpose for depriving Plaintiff of his silver chain and medallion, and it was not returned (Plaintiff believes that defendant Rodriguez kept it or disposed of it).

Liberally construing the allegations in Plaintiff's complaint, the Court finds that Plaintiff's First Amendment free exercise claim against defendant Rodriguez should proceed past screening.

\\\

D. Retaliation in Violation of the First Amendment

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"'[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm,' Brodheim, 584 F.3d at 1269, that is 'more than minimal,' Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration in original).

While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567.

Plaintiff brings a retaliation claim against defendant Rodriguez. Plaintiff alleges that defendant Rodriguez deprived Plaintiff of his silver chain and medallion because Plaintiff submitted a 602/complaint against defendant Rodriguez when he first arrived. In addition, defendant Rodriguez was allowed to read the motion Plaintiff submitted in Mitchell v. Robicheaux, in which Plaintiff informed the United States District Court that defendant Rodriguez was actively violating Plaintiff's religious rights and would not give Plaintiff his religious jewelry.

However, Plaintiff fails to sufficiently connect the adverse action to the protected conduct. While Plaintiff alleges that he filed a 602 against defendant Rodriguez prior to the deprivation of his silver chain and medallion, there is nothing that defendant Rodriguez said or

did to suggest that he deprived Plaintiff of his silver chain and medallion because Plaintiff filed that 602. In fact, there are no allegations suggesting that defendant Rodriguez was even aware of that 602.

As to Plaintiff's allegation that defendant Rodriguez read a motion Plaintiff submitted in which Plaintiff informed the United States District Court that defendant Rodriguez was actively violating Plaintiff's religious rights, this occurred after defendant Rodriguez already refused to provide Plaintiff with his silver chain and medallion. There are no allegations suggesting that defendant Rodriguez took an adverse action against Plaintiff after reading the motion.

Accordingly, the Court finds that Plaintiff fails to state a First Amendment retaliation claim against defendant Rodriguez.

### E. Deprivation of Property in Violation of the Fourteenth Amendment

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). Authorized intentional deprivation of property pursuant to an established state procedure is actionable under the Due Process Clause. Hudson v. Palmer, 468 U.S. 517, 532 & n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). On the other hand, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533. And, "California law provides an adequate post-deprivation remedy for any property deprivations." Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-95). Additionally, "the Due Process Clause is [] not implicated by a *negligent* act of an official causing unintended loss of or injury to … property." Daniels v. Williams, 474 U.S. 327, 328 (1986).

Plaintiff brings a claim against defendants Stanley and Rodriguez for depriving him of his religious property in violation of his Fourteenth Amendment due process rights. Plaintiff

asserts, in a conclusory fashion, that the deprivation was authorized. However, Plaintiff's allegations do not support this conclusory assertion. There are no allegations suggesting that defendant Rodriguez kept or disposed of Plaintiff's silver chain and medallion pursuant to an established state procedure. Instead, Plaintiff alleges that the Warden at R.J. Donovan Prison granted an appeal, which resulted in the Warden sending Plaintiff's silver chain/ANKH medallion to Plaintiff at KVSP. However, defendant Rodriguez refused to give it to Plaintiff.

Thus, Plaintiff alleges, at most, an unauthorized intentional deprivation of his property. As California law provides an adequate post-deprivation remedy, the Court finds that Plaintiff fails to state a claim against defendant Rodriguez for depriving him of his religious property in violation of his Fourteenth Amendment due process rights.

As to defendant Stanley, Plaintiff's only allegations are that defendant Stanley gave Plaintiff a "cell search receipt" for his jewelry and that, after Plaintiff filed an appeal, defendant Stanley offered Plaintiff a steel chain and crucifix as compensation. There are no allegations suggesting that defendant Stanley deprived Plaintiff of his property, authorized defendant Rodriguez to deprive Plaintiff of his property, or acquiesced in the deprivation of Plaintiff's property. Accordingly, the Court finds that Plaintiff fails to state a claim against defendant Stanley for depriving him of his religious property in violation of his Fourteenth Amendment due process rights.

## IV.     CONCLUSION AND RECOMMENDATIONS

The Court has screened the First Amended Complaint and finds that Plaintiff's First Amendment free exercise claim against defendant Rodriguez should proceed past screening. The Court also finds that all other claims should be dismissed.

The Court will not recommend that further leave to amend be granted. The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to comply with Rules 18 and 20, and gave Plaintiff leave to file a Second Amended Complaint. However, Plaintiff chose to stand on his complaint instead of filing a Second Amended Complaint. Therefore, the Court finds that granting further leave to amend would be futile.

Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

1. This case proceed on Plaintiff's First Amendment free exercise claim against defendant Rodriguez;
2. Plaintiff's claim against defendant Rodriguez for retaliation in violation of the First Amendment and Plaintiff's claim against defendants Stanley and Rodriguez for depriving Plaintiff of his religious property in violation of his Fourteenth Amendment due process rights be dismissed for failure to state a claim; and
3. All other claims be dismissed, without prejudice, as unrelated.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 9, 2022**          /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE